IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


TINA MARIE C.,[1]                                    No. 6:19-cv-00055-HZ

                   Plaintiff,                        OPINION & ORDER

        v.

COMMISSIONER, Social Security
Administration,

                   Defendant.


HERNÁNDEZ, District Judge:

        Plaintiff brings this action for judicial review of the Commissioner's final decision

denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social

Security Act. The Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of
the non-governmental party or parties in this case. Where applicable, this opinion uses the same
designation for non-governmental party's immediate family members.

§ 1382(c)(3)). For the reasons that follow, the Court REVERSES the Commissioner's decision and REMANDS this case for further administrative proceedings.

## BACKGROUND

Plaintiff was born on September 27, 1958 and was fifty-five years old on January 15, 2014, the alleged disability onset date. Tr. 12, 19.[2] Plaintiff met the insured status requirements of the Social Security Act ("SSA" or "Act") through March 31, 2019. Tr. 14. Plaintiff has at least a high school education and, according to the ALJ, is able to perform past relevant work as a supervisory ticket agent. Tr. 18–19. Plaintiff claims she is disabled based on a spinal injury, ligament issues in her wrist, and shoulder pain. Tr. 198.

Plaintiff's benefits application was denied initially on January 19, 2016, and upon reconsideration on March 25, 2016. Tr. 12. A hearing was held before Administrative Law Judge MaryAnn Lunderman on December 5, 2017. Tr. 12. ALJ Lunderman issued a written decision on January 31, 2018, finding that Plaintiff was not disabled and therefore not entitled to benefits. Tr. 12–20. The Appeals Council declined review, rendering ALJ Lunderman's decision the Commissioner's final decision. Tr. 1–6.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

---

[2] Citations to "Tr." refer to the administrative trial record filed here as ECF No. 11.

At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets its burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. Tr. 14.

At step two, the ALJ determined that Plaintiff had "the following severe impairment: lumbar degenerative disc disease." Tr. 14.

At step three, the ALJ determined that Plaintiff did not have any impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 14–15.

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light work with certain non-exertional exceptions. Tr. 15. In particular, the ALJ found that "the climbing of ramps, stairs, ladders, ropes and scaffolds, balancing, stooping (bending at the waist), kneeling, crouching (bending at the knees), and crawling must be limited to occasionally. In addition, within the assigned work area, there should be less than occasional (seldom/rare) exposure to hazards, such as machinery and heights." Tr. 15.

At step four, the ALJ determined that Plaintiff was able to perform past relevant work as a supervisory ticket agent. Tr. 18. At step five, the ALJ relied on the testimony of a vocational expert to find, in the alternative, that there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. 18–19. Accordingly, the ALJ concluded that Plaintiff was not disabled. Tr. 20.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Courts consider the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d

1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

## DISCUSSION

Plaintiff raises several issues on appeal. She argues that the ALJ erred in her treatment of (1) Plaintiff's subjective symptom testimony; (2) the lay witness testimony; (3) certain medical opinion evidence; (4) the step four analysis; and (5) the step five analysis.

### I. Plaintiff's Subjective Symptom Testimony

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on clear and convincing reasons" (quotation marks and citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (the ALJ engages in a two-step analysis for subjective symptom evaluation: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ

must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." (quotation marks and citations omitted)). An ALJ must include specific findings supported by substantial evidence and a clear and convincing explanation for discounting a claimant's subjective symptom testimony.

When evaluating subjective symptom testimony, an ALJ may properly consider several factors, including a plaintiff's "daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may also consider a plaintiff's ability to perform household chores, the lack of any side effects from prescribed medications, and the unexplained absence of treatment for excessive pain. *Id.*

Here, the ALJ summarized Plaintiff's testimony as follows:

> The claimant testified that she was unable to work because of pain and nausea. The claimant explained that she had trouble lifting, standing and bending. The claimant noted medication side effects including trouble concentrating, nausea and dizziness. Additionally, the claimant testified that she could lift 10 pounds, sit for 30-45 minutes, walk for 15-20 minutes and stand for 10 minutes.

Tr. 15.

The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" and did not identify evidence of malingering. Tr. 15. However, the ALJ found that Plaintiff's allegations were "not entirely consistent with the medical evidence and other evidence in the record." Tr. 16. Specifically, (1) Plaintiff received only conservative and routine treatment; (2) Plaintiff "travel[ed] to Mexico just two months after her injury in February 2014;" and (3) the objective evidence was inconsistent with Plaintiff's "allegations of disabling limitations." Tr. 16–17.

### a. Conservative and Routine Treatment

An ALJ may rely on conservative treatment to discount a plaintiff's subjective symptom testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (plaintiff's positive response to conservative treatment undermined his testimony regarding the disabling nature of his pain); *see also Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (plaintiff's physical ailments were adequately treated with over-the-counter pain medication).

Here, the ALJ concluded that Plaintiff received only "conservative and routine care for her chronic pain." Tr. 16. In particular, the ALJ noted that Plaintiff took narcotics pain medication and muscle relaxers, and engaged in pool physical therapy and home exercises. Tr. 15–16. According to Plaintiff, she also treated with activity restrictions, facet injections, traction, a TENS unit, and acupuncture. *See, e.g.*, tr. 325, 431, 579, 605–07, 642.

Even assuming this treatment qualifies as "conservative,"[3] the ALJ failed to articulate whether more aggressive treatment options were appropriate or available. *See Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010) (ALJ erred in relying on "conservative treatment" as a basis for rejecting plaintiff's subjective testimony when "the record does not reflect that more aggressive treatment options are appropriate or available. A claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist."). The ALJ therefore erred in relying on this reason to discount Plaintiff's subjective symptom testimony.

---

[3] In particular, the Court notes that Plaintiff treated her pain with opioid analgesics. *See, e.g.*, tr. 652 ("Takes 3 Norco per day some days"); 654 (Plaintiff uses 1 tablet of hydrocodone three times daily). Pain treatment with opioid analgesics is generally not considered conservative. *See Kager v. Astrue*, 256 F. App'x 919, 923 (9th Cir. 2007) (rejecting adverse credibility determination premised on the absence of significant pain therapy where the claimant took prescription pain medications, including Methocarbomal and the narcotic analgesics Roxicet and Valium); *see also Hanes v. Colvin*, 651 F. App'x 703, 706 (9th Cir. 2016) (narcotic painkillers along with spinal injections and radiofrequency ablation not conservative), *Abbott v. Astrue*, 391 F. App'x 554, 560 (7th Cir. 2010) (describing hydrocodone as a "strong pain reliever").

### b. Activities of Daily Living

An ALJ may discount a plaintiff's testimony when it is inconsistent with her daily activities. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ found that a single activity—a "trip to Mexico just two months after her injury in February 2014"—showed "that [Plaintiff's] symptoms were not as severe as alleged." Tr. 16.

The Court does not agree. Neither party identifies any evidence in the record describing this trip to Mexico (for Plaintiff's son's wedding). For example, there is no evidence about *how* Plaintiff traveled to Mexico. The Court cannot tell whether Plaintiff traveled by car or by air, or whether Plaintiff made the trip in one day, or stretched it out over many. There is also no information about Plaintiff's activities while in Mexico or what effect her conditions had on her activities. Without further explanation, this single trip cannot constitute a clear and convincing reason to discount Plaintiff's symptom testimony.

### c. Objective Medical Evidence

Under certain circumstances, an ALJ may discount subjective symptom testimony that is not supported by the objective medical evidence. *See, e.g.*, *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (ALJ could consider mild findings on MRIs and X-rays in discounting the plaintiff's testimony as to her back pain). However, an ALJ may not rely *solely* on a lack of objective medical evidence to discount a plaintiff's testimony. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence."). Accordingly, the ALJ cannot rely on the objective medical evidence here because the other reasons for discounting Plaintiff's subjective symptom testimony were not clear and convincing. The ALJ therefore erred in discounting Plaintiff's subjective symptom testimony.

## II. Lay Witness Testimony

Lay witness testimony regarding a claimant's symptoms or the impact of an impairment on a claimant's ability to work is competent evidence that an ALJ must consider. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012); *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) ("In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work."). Lay witness testimony cannot be disregarded without comment, and the ALJ must give germane reasons for discounting such testimony. *Molina*, 674 F.3d at 1114. Germane reasons must be specific, *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (citing *Stout*, 454 F.3d at 1053), and may include, for example, conflicts with medical evidence and inconsistent daily activities, *Lewis v. Apfel*, 236 F.3d 503, 511–12 (9th Cir. 2001).

Plaintiff argues the ALJ improperly rejected Plaintiff's husband's testimony. The ALJ afforded little weight to all lay witness testimony because:

> they are lay opinions based upon casual observation, rather than objective medical [evidence] and testing. The observations of such layperson(s) certainly do not outweigh the accumulated medical evidence regarding the extent to which the claimant's limitations can reasonably be considered severe. Ultimately, they are unpersuasive for the same reasons that the claimant's own allegations do not fully persuade me, observing that they lack substantial support from objective findings in the record.

Tr. 17.

First, the ALJ did not provide a germane reason when she concluded the lay witness testimony was "based upon casual observation, rather than objective medical [evidence] and testing." To the contrary, SSR 06-03p specifically allows "non-medical sources" to submit reports and testimony about a plaintiff. *See Dodrill v. Shalala*, 12 F.3d 915, 918–19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily

activities are competent to testify as to her condition."). Second, while an ALJ may discredit lay testimony that is substantially similar to a plaintiff's validly discredited allegations, *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009), here, as discussed above, the ALJ did not validly discredit Plaintiff's allegations.

Finally, an ALJ may not discredit lay testimony simply because it is "not supported by medical evidence in the record." *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011); *Bruce*, 557 F.3d at 1116 (ALJ could not reject family member's testimony because it was not supported by medical evidence). While Defendant argues the ALJ found that the lay witness statements were *inconsistent* with the medical evidence, *see Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005), the Court does not agree. To the contrary, the ALJ explicitly found that the statements "lack[ed] substantial *support* from objective findings in the record." Tr. 17 (emphasis added). The Court may not affirm the ALJ on a ground on which the ALJ did not rely. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014). The ALJ therefore erred in rejecting the lay witness testimony.

### III.    Medical Opinion Evidence

Plaintiff argues the ALJ improperly rejected the opinion of Dr. Maloney, a treating physician, and improperly credited the opinions of state agency physicians. Social security law recognizes three types of physicians: (1) treating, (2) examining, and (3) nonexamining. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).  Generally, more weight is given to the opinion of a treating physician than to the opinion of those who do not actually treat the claimant.  *Id.*; 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2).  More weight is also given to an examining physician than to a nonexamining physician. *Garrison*, 759 F.3d at 1012.

If a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014); *Orn*, 495 F.3d at 631. If the treating physician's opinion is not contradicted by another doctor, the ALJ may reject it only for "clear and convincing" reasons supported by substantial evidence in the record. *Ghanim*, 763 F.3d at 1160–61. Even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject the treating physician's opinion without providing "specific and legitimate reasons" which are supported by substantial evidence in the record. *Id.* at 1161; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

### 1. Dr. Maloney

According to the ALJ, Dr. Maloney opined that Plaintiff would miss more than two days of work per month, "even if she was limited to sedentary work due to her chronic pain." Tr. 17.

The ALJ gave this opinion "little weight" because it was:

> inconsistent with the claimant's diagnostic imaging which only revealed mild degenerative changes in the lumbar spine. (Ex. 9F/7). Additionally, Dr. Maloney did not support her opinion with specific evidence from treatment notes. Furthermore, the claimant has consistently demonstrated a normal gait with no neurological deficits, which is inconsistent with a finding of sedentary work. (Exs. 9F/13, 23; llF/7).

Tr. 17.

Plaintiff first argues the ALJ impermissibly ignored Dr. Maloney's opinion that Plaintiff was limited to less than sedentary work. Plaintiff relies on SSR 96–5p, which provides that "[a]djudicators must remember . . . that medical source statements may actually comprise separate medical opinions regarding diverse physical and mental functions, such as walking, lifting, seeing, and remembering instructions, and [] it may be necessary to decide whether to adopt or not adopt each one." SSR 96–5p, 1996 WL 374183 at *4. Plaintiff does not explain,

however, how Dr. Maloney's two "opinions"—that Plaintiff (1) could not perform sedentary work and (2) would miss more than two days of work per month—relate to diverse physical and mental functions. To the contrary, both statements are based on Dr. Maloney's observations of chronic pain. *See* Tr. 669–70. Moreover, it does not appear to the Court that the ALJ simply ignored Dr. Maloney's statement that Plaintiff could not engage in sedentary work. Rather, the ALJ's final reason—that a normal gait with no neurological deficits is inconsistent with sedentary work—appears to reference *only* Dr. Maloney's statement regarding Plaintiff's ability to work at a sedentary level.[4] The Court cannot therefore find that the ALJ erred in failing to discuss one of Dr. Maloney's medical opinions.

That being said, the Court agrees with Plaintiff that the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Maloney's opinion.[5] First, the ALJ found that Dr. Maloney's opinion was inconsistent with the objective medical evidence. Specifically, the ALJ noted that "diagnostic imaging [] only revealed mild degenerative changes in the lumbar spine" and Plaintiff "demonstrated a normal gait with no neurological deficits." Tr. 17. As a general matter, an ALJ may reject an examining physician's opinion when it is contradicted by medical evidence. *Ryan v. Comm'r Soc. Sec.*, 528 F.3d 1194, 1199 (9th Cir. 2008). Here, however, while the ALJ identifies records noting "mild degenerative changes in the lumbar spine," the same records also note "severe bilateral L4–5 facet arthrosis." Tr. 624. An ALJ may not selectively ignore medical evidence that does not support her reasoning. *See Holohan v. Massanari*, 246

---

[4] The Court notes that if Dr. Maloney's statement is inconsistent with sedentary work, it is necessarily inconsistent with less than sedentary work.

[5] Because Dr. Maloney's opinion was contradicted by the state agency physicians, the ALJ was required to provide "specific and legitimate" reasons, supported by substantial evidence in the record, for rejecting it. *See Revels v. Berryhill*, 874 F.3d 648, 662–63 (9th Cir. 2017) (because a treating physician's opinion was contradicted by findings of non-examining state agency doctors, "the ALJ was required to provide specific and legitimate reasons supported by substantial evidence.").

F.3d 1195, 1207 (9th Cir. 2001) ("[T]he ALJ selectively relied on some entries in Holohan's records . . . and ignored the many others that indicated continued, severe impairment."). Additionally, to the extent the ALJ relies on records of a normal gait with no neurological deficits, the ALJ fails to explain how a "normal gait with no neurological deficits" is inconsistent with a finding of less than sedentary work. *See Thor J.S. v. Comm'r Soc. Sec.*, 3:19-CV-5451 DWC, 2020 WL 1041496, *4 (W.D. Wash. Mar. 4, 2020) ("Plaintiff's normal gait does not necessarily show he could perform an eight-hour workday, five days per week, or an equivalent work schedule at a more than sedentary level. Without further explanation, the ALJ's reasoning is conclusory.").

Second, the ALJ found that "Dr. Maloney did not support her opinion with specific evidence from treatment notes."[6] The Court agrees that Dr. Maloney's opinion consists of short, conclusory answers to a questionnaire provided by Plaintiff's attorney and is not supported with specific evidence from her treatment notes. *See* Tr. 669–70. However, the opinion *is* supported by treatment notes in the record that document an ongoing, treating relationship. *See Garrison*, 759 F.3d at 1013 (if responses to a check box questionnaire are "based on significant experience . . . and supported by numerous records . . . [the questionnaire is] entitled to weight that an otherwise unsupported and unexplained check-box form would not merit."). Thus, Dr. Maloney's opinion cannot be disregarded simply because she failed to cite specific evidence from her treatment notes in responding to the short questionnaire provided to her.

The ALJ therefore erred in her treatment of Dr. Maloney's opinion.

---

[6] Defendant argues the ALJ found that "Dr. Maloney's treatment notes did not support her opinion." Def. Resp. 9. Defendant misstates the record. The ALJ did not find that Dr. Maloney's treatment notes did not support her opinion; rather, as noted above, the ALJ found that "Dr. Maloney did not support her opinion with specific evidence from treatment notes." Again, the Court may not affirm the ALJ on a ground on which the ALJ did not rely. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014).

### 2. State Agency Physicians

Plaintiff argues the ALJ erred by adopting the opinions of state agency physicians. According to Plaintiff, these physicians based their RFC assessments on incorrect legal standards. Specifically, they relied solely on a lack of objective medical evidence to find Plaintiff's statements only partially credible. *See* tr. 64, 87. Thus, Plaintiff argues that, by adopting these opinions, the ALJ incorporated this error into the RFC.

First, Plaintiff misstates the record. The state agency physicians did not rely solely on a lack of objective medical evidence when evaluating Plaintiff's credibility. They also relied on Plaintiff's activities of daily living, her medication, and her other treatment modalities. Tr. 64, 65, 87. Second, the Court sees no legal basis for Plaintiff's position. Plaintiff's citations suggest that an *ALJ* may not rely solely on a lack of objective medical evidence when evaluating subjective symptom testimony. These citations do not speak to the process and findings of a state agency physician. Without further argument or support, the Court cannot find the ALJ erred on this basis.

## IV. Step Four

At step four, a claimant has the burden to prove she cannot perform her past relevant work (PRW) "either as actually performed or as generally performed in the national economy." *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002); *Stacy v. Colvin*, 825 F.3d 563 (9th Cir. 2016) ("ALJs may use either the 'actually performed test' or the 'generally performed test' when evaluating a claimant's ability to perform past work."). If the claimant is unable to show she cannot perform her past relevant work, she is not disabled. *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003). Here, the ALJ found that while Plaintiff could not perform her past relevant work as actually performed, she could perform her past relevant work as generally

performed. Tr. 18. Plaintiff challenges this finding, arguing that the ALJ erred in applying the "generally performed" test because Plaintiff's past relevant work is a composite job.[7]

"Composite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT." SSR 82-61, 1982 WL 31387, at *2. "The claimant's PRW may be a composite job if it takes multiple DOT occupations to locate the main duties of the PRW as described by the claimant." POMS DI § 25005.020, available at https://secure.ssa.gov/poms.nsf/ lnx/0425005020. Because a composite job does not have a DOT counterpart, the ALJ may not evaluate whether the claimant can perform it under the "generally performed" test. *Morgan v. Berryhill*, No. 2:16-CV-01052 JRC, 2017 WL 2628094, at *2 (W.D. Wash. June 19, 2017); *LePage v. Colvin*, No. 2:14-CV-424-EFB, 2015 WL 5734836, at *5 (E.D. Cal. Sept. 29, 2015); *Migala v. Berryhill*, No. 17-cv-00482-EDL, 2018 WL 1989550 (N.D. Cal. March 14, 2018).

Here, the VE testified that Plaintiff's past relevant work could be classified as a "ticket agent" under Dictionary of Occupational Titles ("DOT"). DOT 238.367-026 provides that a ticket agent:

> Sells tickets for transportation agencies, such as airlines, bus companies (other than city buses), railroads (other than street railways), and steamship lines: Plans route and computes ticket cost, using schedules, rate books, and computer terminals. Ensures that cabins, seats, or space is available. Answers inquiries regarding airplane, train, bus, or boat schedules and accommodations. May check baggage and direct passenger to designated concourse, pier, or track for loading. May make public address announcements of arrivals and departures. May sell travel insurance.
>
> GOE: 07.03.01 STRENGTH: L GED: R4 M3 L3 SVP: 5 DLU: 80.

However, the VE also testified that Plaintiff's past relevant work differed from the DOT description in two ways: Plaintiff (1) had supervisory duties, increasing the "SVP" from level 5

---

[7] Plaintiff appears to raise a number of additional arguments related to the ALJ's step four findings. The Court finds these arguments poorly supported and difficult to untangle. As the issue above is dispositive, the Court will not address these arguments at this time.

to 6, and (2) practiced the job as "a very heavy level job because she was lifting baggage." Tr. 41. While the DOT states that a ticket agent "may check baggage," the VE testified that Plaintiff's past relevant work included an *additional* function of having to lift the baggage." Tr. 48 (emphasis added).

Plaintiff testified that this additional function was a main duty of her past relevant work. She did not simply "check" baggage. Instead, she was required to load and unload that baggage during check-in, after inspection, and onto and off-of planes. Tr. 219–20. In fact, Plaintiff testified that she lifted 5,000 to 10,000 pounds daily. *Id.* This included frequently lifting fifty or more pounds, and occasionally lifting more than 100 pounds. *Id.* It is therefore clear from this written testimony that Plaintiff's baggage handling function was a main duty of her past relevant work. It was not adequately represented by the DOT listing for "ticket agent," which requires only light exertion.[8]

In sum, the evidence shows that Plaintiff's past relevant work was a composite job. The ALJ therefore erred in evaluating whether Plaintiff could perform that composite job as "generally performed" in the national economy. Because the ALJ determined that Plaintiff could not perform her past relevant work as actually performed, Plaintiff met her step four burden.

## V.    Step Five

Defendant argues that even if the ALJ erred in her step four findings, this error was harmless due to the ALJ's alternative step five findings. At step five, if the claimant cannot perform past relevant work, the burden then shifts to the Commissioner to establish that the claimant is still capable of performing other substantial gainful work. *Bray v. Comm'r of Soc.*

---

[8] Two state agency disability adjudicators agreed with this conclusion, finding that Plaintiff's past relevant work "was a composite of significant elements from two or more occupations and does not have a DOT counterpart." Tr. 95; tr. 73–74 ("Clmt appears to have PRW that is a composite job. She performed the duties of" a baggage checker; supervisor, ticket sales; and gate agent.).

*Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). In making this step five determination, the

ALJ must first determine whether a claimant's exertional limitations by themselves merit a

finding of disability under the decisional grids listed at 20 C.F.R. Part 404, Subpart P, Appendix

2. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1116 (9th Cir. 2006). If the grids do not mandate a

finding of disability, the ALJ may then call a vocational expert (VE) to testify to which jobs in

the national economy a claimant is capable of performing. *Tackett v. Apfel*, 180 F.3d 1094, 1101

(9th Cir. 1999).

Under the decisional grids, a claimant of advanced age (55–60), who is limited to light

work and has at least a high school education and no transferable work skills, is disabled. 20

C.F.R. Pt. 404, Subpt. P, App. 2, 202.06. An identical claimant with transferable work skills,

however, is not disabled. *Id.* at 202.07. A transferable work "'skill' [is] a specific and articulable

learned ability." *Vita C. F. v. Berryhill*, 5:18-cv-00119-KES, 2018 WL 5816113 (C.D. Cal. Nov.

5, 2018). More specifically,

> A skill is knowledge of a work activity which requires the exercise of significant
> judgment that goes beyond the carrying out of simple job duties and is acquired
> through performance of an occupation which is above the unskilled level
> (requires more than 30 days to learn). It is practical and familiar knowledge of
> the principles and processes of an art, science or trade, combined with the ability
> to apply them in practice in a proper and approved manner. This includes
> activities like making precise measurements, reading blueprints, and setting up
> and operating complex machinery. A skill gives a person a special advantage
> over unskilled workers in the labor market.

SSR 82-41, 1982 WL 31389, at *2. Regardless of whether the ALJ's disability determination

relies on the grid or the testimony of a VE, the ALJ must make specific findings on the

transferability of work skills when they are relevant to the ultimate determination. *Bray*, 554 at

1225.

Here, Plaintiff is of advanced age, has a high school education or more, and is limited to light work. Thus, under the grids, if Plaintiff has transferable work skills, she is not disabled. If she does not have transferable work skills, however, she is disabled. Based on the testimony of the VE, the ALJ found that Plaintiff has the following transferable work skills: "service orientation; helping people solve their problems; clerical skills; and knowledge of the transportation industry." Tr. 19. Thus, according to the VE, given Plaintiff's age, education, past relevant work experience, and RFC, Plaintiff could perform the representative occupations of cashier, teller, and collector. Tr. 19. The ALJ therefore concluded that Plaintiff was not disabled.

Plaintiff argues the ALJ erred in finding that Plaintiff had transferable skills.[9] The Court agrees. The Court first notes that the VE did not testify that "service orientation" and "helping people solve their problems" were two separate skills. Rather, the VE defined a "service orientation" as "helping people solve their problems." Tr. 42. Regardless, the ALJ erred in relying on this vague and conclusory testimony to find that Plaintiff possessed transferable skills. Service orientation (or "helping people solve their problems") describes a broad category of work but does not identify any specific job activities or acquired skills. The VE did not, for example, testify that Plaintiff's past relevant work included answering phones or responding to customer complaints. *See Wolfe v. Berryhill*, No. 16-01211-KES, 2017 WL 1074932, at *6 (C.D. Cal. Mar. 21, 2017) ("The term 'customer service' describes a broad category of work, not specific job activities/skills such as answering phones, researching customer complaints, processing returns, or interacting with the public."); *Muehling v. Colvin*, No. 12-013, 2013 WL

_____

[9] Plaintiff also argues the ALJ failed to find that Plaintiff's skills are readily transferable to a "significant range of semi-skilled or skilled work" under Rule 202.00(c) and *Lounsburry v. Barnhart*, 468 F.3d 1111 (9th Cir. 2006). In particular, Plaintiff argues that the ALJ only identified three jobs, which does not constitute a significant range of semi-skilled or skilled work. The Court does not agree. *See Susan M. v. Berryhill*, No. 6:17-cv-1083-PK, 2018 WL 4692468 (D. Or. Aug. 24, 2018) (finding that "two occupations are sufficient to establish 'significant range of work' pursuant to Rule 202.00(c)").

1194078, at *4 (N.D. Tex. Mar. 6, 2013) ("It is unclear from the record exactly what entails a customer service skill or, more importantly, what there is about a 'customer service skill' that requires more than thirty days to learn and gives plaintiff a special advantage over other job applicants. It could be that customer service skills merely involve something as simple as listening to a customer, replying with an answer, and other activities that are part of day-to-day, basic human interaction."). The Court sees no explanation as to what the VE or ALJ intended by "service orientation;" the term is therefore too vague to describe a transferable skill as required by SSR 82–41.

Similarly, the ALJ's reliance on "clerical skills" is far too broad. *See Reyes v. Colvin*, No. C14–76–RSL–BAT, 2014 WL 4057181 (W.D. Wash. Aug. 14, 2014) (finding that "'clerical skills' is a category of skills, and a reference to this broad category fails to support the ALJ's finding that such skills were transferable"). Defendant argues that SSR 82–41 specifically provides that "customer service and clerical knowledge" are transferable work skills. Defendant is correct to the extent that SSR 82–41 describes an example of "a semiskilled general office clerk (administrative clerk)" who performs "typing, filing, tabulating and posting data in record books, preparing invoices and statements, operating adding and calculating machines, etc." and states that "[t]hese clerical skills may be readily transferable" to other semiskilled positions." SSR 82-41, 1982 WL 31389, at *3. Here, however, there are no findings regarding typing, filing, tabulating and posting data in record books, preparing invoices and statements, operating adding and calculating machines, or any other specific skill that might fall under the incredibly broad umbrella of "clerical skills."

Thus, the ALJ failed to make specific findings as to the transferability of Plaintiff's work skills. The ALJ therefore erred in her step five findings.

## VI.    RFC and Vocational Hypotheticals

Lastly, Plaintiff argues the ALJ erred by failing to "include limitations established by [Plaintiff's] improperly rejected testimony and the improperly rejected opinions of Dr. Maloney" into her RFC findings and vocational hypotheticals. Pl. Br. 30. Plaintiff merely restates arguments raised and addressed above. The Court will not address them again here.

## VII.    Remand for Further Proceedings

The decision whether to remand for further proceedings or for immediate payment of benefits is within the Court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014); *see also Treichler v. Comm'r*, 775 F.3d 1090, 1100 (9th Cir. 2014) ("credit-as-true" rule has three steps). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020. Second, the record must be fully developed and further administrative proceedings would serve no useful purpose. *Id.* Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.*; *see also Treichler*, 775 F.3d at 1101 (when all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule" of remanding to the agency).

Plaintiff argues that remand for an award of benefits is appropriate. This case, however, is not one with "rare circumstances" justifying that type of remand. As noted above, while Dr. Maloney's opinion supports a finding of disability, two state agency physicians concluded that Plaintiff was not disabled and could, in fact, perform light work with postural and environmental

limitations. *See* Tr. 55–74; 76–96. Medial records related to a request for worker's compensation benefits also suggest that Plaintiff was less restricted than Dr. Maloney opined. *See* Tr. 311 (Plaintiff not medically stationary), 313 (Plaintiff could be released to modified duty), 616 (Plaintiff could lift up to 40 pounds, with a goal of lifting up to 70 pounds). Additionally, the VE testimony is not well developed, and there are outstanding questions as to whether Plaintiff obtained transferable work skills in her past relevant work. Thus, while the ALJ's decision includes reversible error, the record is not fully developed and further proceedings are required. The Court therefore declines to remand this case for the payment of benefits.

## CONCLUSION

The decision of the Commissioner is reversed and remanded for further administrative proceedings.

IT IS SO ORDERED.

Dated: _____ April 3, 2020 _____.

_____
MARCO A. HERNÁNDEZ
United States District Judge